UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION
CAUSE NO.

16-CV-1325

United States Courts
Southern District of Texas
FILED

MAY 1 1 2016

David J. Bradley, Clerk of Court

| | |
|---|---|
| ROBERT J. AUSTIN, JR. MICHAEL D. AUSTIN and KELLI D. AUSTIN, individuals, and KELLI D. AUSTIN, TRUSTEE<br>Plaintiffs,<br><br>vs.<br><br>CHAMBERS COUNTY, TEXAS, BARBERS HILL INDEPENDENT SCHOOL DISTRICT, and CITY OF MONT BELVIEU, SABEL OF HOUSTON, LLLP (A Florida Limited Liability Partnership not qualified to do business in Texas) as successor in interest to SABEL OF HOUSTON, LTD. (A Texas Limited Partnership that merged out of existence on February 22, 2011 into SABEL of Houston, LLLP) ("SABEL"), PERDUE BRANDON FIELDER, COLLINS & MOTT, LLP, a Texas Limited Liability Partnership, YOLANDA HUMPHREY, individual, COMMERCE TITLE and its successor-in-interest PREMIER TITLE INSURANCE COMPANY and LANAE THOMPSON, individual<br><br>Defendants | PLAINTIFFS ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT, TO SET ASIDE AND VACATE A TAX SALE, TO REMOVE CLOUD AND QUIET TITLE AND APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION |

**PLAINTIFFS' COMPLAINT FOR DECLARATORY JUDGMENT, TO SET ASIDE AND VACATE A TAX SALE, TO REMOVE CLOUD AND QUIET TITLE AND APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

COMES NOW the Plaintiffs, ROBERT AUSTIN, JR., MICHAEL AUSTIN and KELLI AUSTIN, (collectively referred to as "Plaintiffs"), and hereby files their ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT, TO SET ASIDE AND VACATE A TAX SALE, TO REMOVE CLOUD AND QUIET TITLE AND APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION, and hereby move the Court for a temporary restraining order and preliminary injunction seeking to preserve the status quo of the

1

parties during the pendency of the action or until otherwise determined by the Court, preserving the status quo and possession of the real property.

### I. JURISDICTION AND VENUE

1. Jurisdiction and venue are proper because this lawsuit seeks to set aside the *ad volerum* tax sale in Cause No. CV25215 in the 344th Judicial District Court of Chambers County, Texas, and requests a declaratory judgment that ROBERT AUSTIN, JR., MICHAEL AUSTIN and KELLI AUSTIN, by virtue of equitable title, are the owners of the property the subject of this lawsuit which is located in Chambers County, Texas. Jurisdiction is proper in the U.S. District Court because the Defendants are depriving Plaintiffs of their property without due process of law in violation of, including but not limited to, the 14th Amendment to the US Constitution and 42 USC § 1983.

### II. PARTIES

2. Plaintiffs are ROBERT AUSTIN, JR., MICHAEL AUSTIN AND KELLI AUSTIN, Texas Residents, and the sole and rightful heirs of Robert J. Austin (hereinafter known as "Bobby Joe") and Billie S. Austin and KELLI D. AUSTIN, TRUSTEE.

3. Defendants are CHAMBERS COUNTY, TEXAS, a political subdivision of the State of Texas, BARBERS HILL INDEPENDENT SCHOOL DISTRICT, and CITY OF MONT BELVIEU (hereinafter also known as "Taxing Authorities"), SABEL OF HOUSTON, LLLP (A Florida Limited Liability Partnership not qualified to do business in Texas) as successor in interest to SABEL OF HOUSTON, LTD. (A Texas Limited Partnership that merged out of existence on February 22, 2011 into SABEL of Houston, LLLP) ("SABEL"), PERDUE BRANDON FIELDER, COLLINS & MOTT, LLP, a Texas Limited Liability Partnership "Perdue Brandon"), YOLANDA HUMPHREY, Individually, a Texas attorney ("HUMPHREY"), COMMERCE TITLE and its successor-in-interest PREMIER TITLE COMPANY and LANAE THOMPSON, the party that, based on information and belief, purchased 3402 Bridgett Lane at the wrongful and illegal property tax sale held March 1, 2016 at the Courthouse in Chambers County, Texas.

4. Each Defendant will be served in accordance with Rule 4 of the FRCP.

### III. SUMMARY OF FACT

5. This is lack of notice and due process case. The property was foreclosed upon and sold without notice to the rightful and lawful owners of the property.

### IV. GENERAL FACT STATEMENT

6. Stated briefly, this case involves a piece of property, which was paid for in full by Robert J. "Bobby Joe" and Billie S. Austin on May 3, 2006 as part of a larger property payoff.

2

The property was purchased from SABEL OF HOUSTON, LTD. After payment in full to SABEL OF HOUSTON, LTD., COMMERCE TITLE was instructed by SABEL OF HOUSTON to file a special warranty deed passing all the property to Robert J. "Bobby Joe" Austin and to file a complete release on the whole property. COMMERCE TITLE failed to abide by the specific instructions from the seller. COMMERCE TITLE failed to file the special warranty deed on the entire property and altered the signed and notarized release to only cover one section of the property, not the entire property as instructed. The COUNTY TAXING AUTHORITY did not recognize the exemption filed by Bobby Joe and Billie Austin on 3410 Bridgett Lane because the property was never properly transferred. The TAXING AUTHORITY filed suit against SABEL in 2009 for the delinquent property taxes. SABEL failed to file a 12(b) Motion to Dismiss based on the grounds that SABEL did not own the property. SABEL was aware the deed was never recorded properly once served with the lawsuit. SABEL took no action to change the deed to the correct party. YOLANDA HUMPHREY, the attorney for the Taxing Authority, has been aware the AUSTINS owned the property at least since March 17, 2014, yet never noticed Bobby Joe Austin or his heirs of the suit. A *Lis Pendens* and Motion to Vacate were filed prior to the tax sale, which was held despite this actual knowledge, and the TAXING AUTHORITY sold PLAINTIFFS' property to THOMPSON with knowledge of those documents. All bills and notices on the property tax went to SABEL and not to the AUSTINS.

7. Plaintiffs are the sole heirs of Robert J. "Bobby Joe" Austin and Billie S. Austin, both deceased.

8. On or about May 26, 1993, Bobby Joe and Billie S. Austin, and their trust entitled Kelli D. Austin, Trustee, borrowed $55,000.00 from LEWIS RESS, secured by the Deed of Trust signed May 26, 1993 on 4.692 acres of land located in Mont Belvieu, Chambers County, Texas, recorded in Volume 208, Page 582 of the Real Property Records of Chambers County, Texas. (attached hereto and incorporated herein by reference as Exhibit 1). On February 22, 2002, there was a modification to the loan agreement changing the lender from Lewis Ress to SABEL OF HOUSTON, LTD. SABEL OF HOUSTON, LTD. was a Texas Limited Partnership formed on November 29, 1995, a modification agreement was filed in the real property records of Chambers County, recorded in Volume 542, page 764 of the real property records of Chambers County (a true and correct copy is attached hereto and incorporated herein by reference as Exhibit 1.)

9. On May 18, 2005 SABEL OF HOUSTON, LTD. demanded additional collateral to secure the note and required Plaintiff KELLI AUSTIN, on behalf of her parents' trust, sign a deed in lieu of foreclosure, transferring the property to Defendants SABEL OF HOUSTON, LTD. SABEL and O'Connor caused this Deed in Lieu of Foreclosure

3

document to be recorded in the real property records of Chambers County on November 11, 2005, Volume 819, Page 705 (a true and correct copy is attached hereto and incorporated herein by reference as Exhibit 2). However, the AUSTINS remained on the property with SABEL'S knowledge and consent. At the time of the recording of the deed in lieu of foreclosure, there were approximately 2.3247 Acres left of the original 4.6992 acres encompassed in the May 26, 1993 Deed of Trust. Of that approximate 2.3247 acres, there were three dwellings and 3 physical addresses for purposes of property taxes, although all the land was under the same deed of trust. Those addresses were 3418 Bridgett, 3410 Bridgett and 3402 Bridgett ("The Parcels").

10. On March 9, 2006, KELLI D. AUSTIN, TRUSTEE, paid SABEL a $45,000.00 non-refundable cashier's check payment to open escrow on the property (a true and correct copy is attached hereto and incorporated herein by reference as Exhibit 3).

11. In or around May 3, 2006, Bobby Joe and Billie S. Austin obtained a loan from Freemont Investors. This loan was only on the section of property known as 3402 Bridgett Lane, but the proceeds from this loan fully paid-off the SABEL note(s) covering all of The Parcels. There was a closing held May 3, 2006 at Commerce Title in Baytown, Texas which Bobby Joe Austin, Billie S. Austin and KELLI AUSTIN as Trustee of her parents' trust attended

12. COMMERCE TITLE was to handle the transfer of the funds from Austin to SABEL, and prepare and record a special warranty deed on all The Parcels, a deed parceling out 3402 by itself and one deed of trust between Robert J. Austin and Freemont. There were three different addresses for the acreage. All parties involved in this closing were aware of this. 3418 Bridgett Lane and 3410 Bridgette, which were to go back from SABEL OF HOUSTON, LTD, to Bobby Joe Austin. 3402 Bridgett Lane was to be transferred to Bobby Joe Austin's name on its own deed with a separate deed of trust to Freemont Investors (new lenders). An exhaustive search of the deed records for this complaint found that only two of the documents that were completed were the deed to Bobby Joe Austin on 3402 Bridgett and the deed of trust to Freemont secured by the 3402 Bridgett address. The special warranty deed, drafted and supplied by SABEL OF HOUSTON, LTD. to COMMERCE TITLE transferring the entire property back to the Austins, with all three addresses of all of The Parcels, inclusive, was never filed. KELLI AUSTIN had Bobby Joe and Billie S. Austin fill out and sign an exemption form for the county at the time of the closing on the 3410 Bridgett Lane Property and KELLI AUSTIN and her parents left the title closing and proceeded immediately to the US Post Office on Baker Street in Baytown, Texas and mailed the exemption to the County. Bobby Joe and Billie S. Austin was over the age of exemption at the time this document was mailed and from that day forward, no taxes should have been owed on the 3410 Bridgett Property based on

4

the exemption rates and the value assigned to the land.

13. On November 30, 2009, the TAXING AUTHORITY DEFENDANTS, by and through their agents PERDUE BRANDON and YOLANDA HUMPHREY, filed a tax suit against the property located at 3410 Bridgett Lane. The only defendant listed was SABEL OF HOUSTON, LTD, the citation was issued November 30, 2009. (A true and correct copy of the Court docket is attached hereto and incorporated herein by reference as Exhibit 4). The Plaintiffs were omitted as defendants and were not informed of the suit.

14. Defendant SABEL filed an original Answer on January 21, 2010 and copies were not sent to the AUSTINS. A trial was scheduled for March 4, 2014. The TAXING AUTHORITY DEFENDANTS obtained a judgment against SABEL OF HOUSTON, LTD.

15. On March 17, 2014 a Petition to Vacate Judgment with a proposed order was filed with the Court by PERDUE BRANDON and assented to by SABEL. In the Petition to Vacate Judgment, the Taxing Authority, Perdue Brandon et al and YOLANDA HUMPHREY state in Section III.

    "Subsequent to the entry of Judgment, Movant's discovered that **necessary parties were not included in the Judgment**. At the time the judgement in the above numbered and styled cause was signed, **the undersigned attorneys were not aware of the omission of said necessary parties**." [EMPHASIS ADDED]

    A further review of the Court's docket shows that no additional notice was sent to any party, including the Plaintiffs. On August 4, 2015 an agreed judgment between SABEL OF HOUSTON, LTD. and Taxing Authority Defendants making the proceeding an *In Rem* proceeding on August 4, 2015. The ONLY other parties that would have needed to be noticed was the Bobby Joe Austin, Billie S. Austin and their trust. (a true and correct copy is attached hereto and incorporated herein by reference as Exhibit 5)

16. Defendant TAXING AUTHORITIES, by and through their agents, PERDUE BRANDON and YOLANDA HUMPHREY entered into the agreed judgment without noticing any additional or necessary parties, including the AUSTINS that actually owned the property, thereby denying the Austin Family the ability to appear in and defend this suit (see Court Docket, attached hereto and incorporated herein by reference as Exhibit 4).

17. The Defendants, HUMPHREY, PERDUE BRANDON and the TAXING AUTHORITIES were aware that all parties were not noticed, as evidenced by the above-referenced filing (a true and correct copy is attached hereto and incorporated herein by reference as Exhibit 6).

18. In October 2015, Plaintiffs KELLI and MICHAEL AUSTIN learned for the first time that 3410 Bridgett Lane was posted for foreclosure because YOLANDA HUMPHREY and an unidentified male attorney stopped at the driveway of 3418 Bridgett Lane and the male attorney asked if KELLI AUSTIN knew who owned 3410 Bridgett Lane. KELLI AUSTIN told the male attorney and YOLANDA HUMPHREY from PERDUE BRANDON that the 3410 address was owned by Bobby Joe and Billie S. Austin. The male attorney informed KELLI AUSTIN that the property was owned by SABEL OF HOUSTON, LTD. KELLI AUSTIN explained that this was incorrect and gave them the name of Michael O'Connor to contact regarding the appropriate ownership of the property. KELLI AUSTIN also informed HUMPHREY and the male attorney that the no one in the Austin Family had received any notice of the lawsuit.

19. On November 2, 2015 KELLI AUSTIN filed a Motion to Vacate the Judgment to stop the November 2015 sale. Judge Randy McDonald refused to sign KELLI AUSTIN'S Order Vacating the Judgment because she was a *pro se* litigant. He ordered KELLI AUSTIN to return the next day on November 3, 2015. She did. YOLANDA HUMPHREY presented a Motion to Vacate to the court. McDonald signed the HUMPHREY document on November 3, 2015 and KELLI AUSTIN'S MOTION was struck by the Court. McDonald told KELLI AUSTIN she had to hire an attorney. KELLI AUSTIN had no funds with which to hire an attorney and there was nothing procedurally wrong with the document she had submitted for filing and she told Judge McDonald she would be proceeding *pro se*.

20. KELLI AUSTIN met with Marie, YOLANDA HUMPHREY'S assistant in the hallway of the courthouse at HUMPHREY'S request on November 3, 2015. KELLI AUSTIN went downstairs to the property records and purchased copies of the deeds, such as they were, so that Ms. HUMPHREY could have the name of the title company that the Austin Family thought had recorded the correct deeds. Until November 3, 2015, the Austin Family was unaware the deeds referred to herein had not been properly recorded. As the grantees of these deeds, the Plaintiffs and the Austin Family had no authority to sign or file the missing deeds. SABEL OF HOUSTON, LTD., received the entire payoff of the loan secured by on the properties and COMMERCE TITLE was instructed to file all the documents necessary for the closing and transferring the properties as described in paragraph 6 hereof. (a true and correct copy of the instruction letter from SABEL OF HOUSTON, LTD to COMMERCE TITLE dated April 21, 2006 is attached hereto and incorporated herein by reference as Exhibit 7)

21. After a very complicated search, Plaintiff KELLI AUSTIN was able to find who the successor-in-interest to COMMERCE TITLE was on January 13, 2016. Kelli Austin

6

filed a claim with Beth Sharp at PREMIER TITLE to have the records fixed on January 13, 2016. Kelli Austin then called Marie, the assistant for YOLANDA HUMPHREY at PERDUE BRANDON and told Marie that KELLI AUSTIN had filed the claim with PREMIER TITLE. Unbeknownst to KELLI AUSTIN, HUMPHREY amended the petition in the tax suit, never served KELLI AUSTIN or ROBERT J. AUSTIN, JR. and MICHAEL D. AUSTIN and obtained a default on December 21, 2015. PERDUE BRANDON set the house for foreclosure sale on March 1, 2016. At no time, and in no way, did YOLANDA HUMPHREY ever contact any member of the Austin family about the foreclosure sale. KELLI AUSTIN found out about the sale when someone came to look at the dwelling on Sunday, February 28, 2016. KELLI AUSTIN began calling HUMPHREY at 8 a.m. on February 29.

22. KELLI AUSTIN told HUMPHREY about the claim filed with PREMIER TITLE and asked Humphrey to stop the sale. HUMPHREY would not. HUMPHREY said KELLI AUSTIN did not own the property, SABEL OF HOUSTON, LTD. did. KELLI AUSTIN told HUMPHREY that BHISD Tax Office said the Austin's didn't owe any taxes on the property. HUMPHREY informed AUSTIN that BHISD could not speak for CHAMBERS COUNTY and that was her client. Subsequent investigation shows HUMPHREY and PURDUE BRANDON do represent BHISD and BHISD was the lead plaintiff in the tax suit.

23. MICHAEL and KELLI AUSTIN spent the entire day of February 29, 2016 trying to hire an attorney to represent them to stop the sale, but none would handle the case on such short notice. KELLI AUSTIN was aware that Judge McDonald was just going to ignore any *pro se* filing she submitted. MICHAEL AUSTIN spoke to Tonya in McDonald's office who told Michael Austin to have an attorney call and set a hearing and that would stop the sale. Sean Flanagan, Esq., an attorney from Nevada who has represented Miss Austin in prior court cases called on behalf of the AUSTINS until they could try to get local counsel. Tonya said, "Nothing is filed, I can't set a hearing." She never told Michael Austin anything had to be filed. This was at 4:15. Michael Austin delivered a Motion to Vacate Judgment and proposed order and filed it with the court at 4:50 p.m. By the time Attorney Flanagan called the Judge's office at 4:56, they were closed. Flanagan called at 8 am on the date of the sale and Tonya told him she had just gotten to the office and to please call back at 9:00. Tonya was well aware the sale was scheduled for 10. Flanagan called back at nine and Tonya told him she had given the Motion to Vacate to the judge and she didn't know what he was going to do with it.

24. In response to Flanagan's conversation with Tonya, KELLI AUSTIN filed a *lis pendens* on the property. The *lis pendens* was filed at 9:50, the sale was schedule for 10:00. On the way to Anahuac, KELLI AUSTIN called Tonya who said the judge said it was a *pro*

7

*se* filing with no order and he let the sale proceed. LANAE THOMPSON bought the subject property knowing there was a Motion to Vacate filed and subject to the *lis pendens*. (A copy of the *lis pendens* has been attached hereto and incorporated herein by reference as Exhibit 8).

## V. CAUSES OF ACTION

### A. Suit to Quiet Title and Actions under Texas Deceptive Trade Practices

25. Plaintiffs incorporate Paragraphs 1-24 as if fully set forth herein.

26. The deed work performed by Daniel Elkins on behalf of COMMERCE TITLE (and its successor-in-interest PREMIER LAND TITLE INSURANCE COMPANY) for the May 3, 2006 closing were done incorrectly and title did not pass to the actual equity owners of the land, the Austin Family. COMMERCE TITLE ignored the express instructions of the Seller, SABEL OF HOUSTON, LTD. wherein they were instructed to file the Special Warranty Deed releasing the entire "$55,000 deed of trust from SABEL to Robert Austin." (a true and correct copy is attached hereto and incorporated herein by reference as Exhibit 7).

27. Plaintiffs did not discover and, with the exercise of reasonable diligence, could not have discovered the lawsuit to collect delinquent taxes because the various taxing authorities, Defendants in this case and taxing jurisdictions failed to comply with the Texas Property Code by not providing notice to all parties in interest concerning the real property the Defendant proposed to settle foreclosure upon aid sell at auction. The taxing authorities and taxing jurisdictions do not come to the court with clean hands, since they knew their own neglect precluded Plaintiffs from participating in Cause No. CV25215, and also prevented Plaintiffs from timely paying taxes that were delinquent or protesting said taxes, which Plaintiff had every desire, opportunity and right to pay or protest in order to protect their position. It is Plaintiffs firmly held belief that there are no property taxes owed because an exemption form was filed May 3, 2006 and would have been in effect until Bobby Joe Austin's death as the age exemption would have expired at that time.

28. Plaintiffs injury was not discoverable until Plaintiffs found out about the property sale and conducted and exhaustive title investigation due to the actions of the taxing authorities who are Defendants herein in failing to comply with the Texas Property Code.

29. SABEL OF HOUSTON, LTD was fully aware they did not own the subject property and informed PERDUE BRANDON. The next logical question a reasonable person would ask is "who does own this particular property." SABEL certainly knew and negotiated

8

the deal with KELLI AUSTIN and Lewis Ress signed the release of lien in front of a notary in April of 2006. These facts evidence the fact that SABEL OF HOUSTON, LTD (now SABEL OF HOUSTON, LLLP) had actual knowledge of the conveyance to the Austins as SABEL received payment of the funds on May 9, 2006. SABEL filed an Answer to the tax suit on January 21, 2010 then did not attend any hearings or court dates and the taxing authorities obtained a judgment against SABEL on March 4, 2014.

30. The filing asking to set aside that judgment, filed March 17, 2014 (a true and correct copy is attached hereto and incorporated herein by reference as Exhibit 9) is evidence that YOLANDA HUMPHREY, PERDUE BRANDON FIELDER COLLINS & MOTT, LLP and their clients the TAXING AUTHORITIES knew that SABEL OF HOUSTON, LTD was not the owner of the property.

31. HUMPHREY clearly states that necessary parties were not included, yet she enters into an *in rem* agreement with SABEL on August 4, 2015. Despite the filing presented to the court telling that the necessary parties were not included, no notice is ever sent to any other party or member of the Austin Family until KELLI AUSTIN files the Motion to Vacate. The Motion to Vacate filed by HUMPHREY seems to be an attempt by HUMPHREY to circumvent the judgment that she obtained on SABEL while allowing SABEL to agree to an *in rem* proceeding. This action allows SABEL not to have a judgment against it and allows HUMPHREY'S clients, the TAXING AUTHORITIES to receive all the funds from any sale.

32. KELLI AUSTIN'S Motion to Vacate, which the Court struck, gave her address as 3418 Bridgette Lane, Mont Belvieu, Texas 77523. HUMPHREY filed an amended petition on November 17, 2015, and KELLI AUSTIN was never served, and received no notice. (See Austin Affidavit, which has been attached hereto and incorporated herein by reference as Exhibit 10).

33. The TAXING AUTHORITIES, PERDUE BRANDON et al through its agent YOLANDA HUMPHREY worked to equity strip the Plaintiffs of their ownership interest in the subject property, protect the credit of SABEL OF HOUSTON, LTD. by removing the judgment and allowing TAXING AUTHORITIES to sell PLAINTIFFS' property without notice, in violation of the 14th Amendment of the US Constitution and Texas law.

34. YOLANDA HUMPHREY is a real estate expert as she represents the TAXING AUTHORITIES in multiple tax suits. This real estate expert and attorney intentionally and willfully ignored the Plaintiffs' obvious interest in the property.

35. PERDUE BRANDON, TAXING AUTHORITY DEFENDANTS and YOLANDA HUMPHREY were in no hurry to move the tax case forward. It was originally filed in 2009, answered in January, 2010, then not taken to trial until 2014. Another 17 months went by from the time it was "discovered" that the proper parties were not noticed until SABEL and HUMPHREY did their agreed *in rem* judgment. From the time of the original filing until the date of the judgment was 3 months short of 6 years. From the time the KELLI AUSTIN filed a motion to vacate on November 3, 2015 until the default judgment was entered December 21, 2015 was six weeks over a holiday period, where no notice is ever sent. It needs to be noted that there was no speed in the judicial system until PLAINTIFF KELLI AUSTIN pointed out to YOLANDA HUMPHREY, unnamed male associate and Marie that there were no taxes due on the property. PERDUE BRANDON is paid based on a percentage of the amount of taxes they recovered. There were no taxes owed.

36. SABEL OF HOUSTON, LTD owed a fiduciary relationship to PLAINTIFFS, which Texas Law holds to be a special relationship. This relationship arises from the various contracts drafted and/or signed by the DEFENDANTS and the duties owed to PLAINTIFFS are strict duties as a matter of law. The Defendants are also bound by the concept of good faith and fair dealing, due to their unequal bargaining position with the Austin Family and the Deed in Lieu of Foreclosure. *Arnold v. National County Mut. Fire Ins. Co.*, 725 S.W.2d 165 (Tex. 1987). By failing to inform the Court and the TAXING AUTHORITY DEFENDANTS of the rightful owner of the property, DEFENDANTS SABEL, breached a duty of common law and give rise to an independent tort liability. Further, because of the Fiduciary Duty that existed between SABEL and PLAINTIFFS, "A party owing the duty in a fiduciary duty must, if need arises, put the interest of the beneficiary ahead of its own." *Lee v. Wal-Mart Stores, Inc.*, 943 F.2d 554, 559 (5th Cir. 1991). SABEL had a duty to correctly record the deed to the AUSTINS as soon as they learned it was not filed.

37. COMMERCE TITLE, now PREMIER LAND TITLE INSURANCE COMPANY owed a fiduciary relationship to PLAINTIFFS, which Texas Law holds to be a special relationship. This relationship arises from the various contracts drafted and/or signed by the DEFENDANTS, or requested that the DEFENDANTS file and the duties owed to PLAINTIFFS are strict duties as a matter of law. COMMERCE was informed and aware that the May 3, 2006 closing was to record 2 deeds and 1 deed of trust. In the title commitment policy (attached hereto as a true and correct copy is attached hereto and incorporated herein by reference as Exhibit 11), it shows that it a full release of the Deed of Trust that governs all the land is required. SABEL OF HOUSTON sent that document and someone from COMMERCE TITLE attached the legal description for only 3402 Bridgett before recording. Documents obtained from PREMIER show that they are

aware of the other two parcels were also part of the transaction, and in fact, made PLAINTIFFS pay the property taxes on all three properties to do the closing. PLAINTIFF KELLI AUSTIN had to sign a document releasing all claims against SABEL for 3402 and 3418 Bridgette (a true and correct copy is attached hereto and incorporated herein by reference as Exhibit 12). In addition, SABEL OF HOUSTON gave PREMIER permission to release all the closing paperwork to KELLI AUSTIN. PREMIER did not. KELLI AUSTIN contacted the Texas Department of Insurance and Patrick Quigly, TDI attorney, requested the documents from PREMIER and then AUSTIN obtained the letter from SABEL to COMMERCE stating that SABEL wanted the Special Warranty Deed passing all the property back to the Austin's recorded. It was not ever done. Tax Certifications were required by COMMERCE TITLE on all 3 addresses (a true and correct copy is attached hereto and incorporated herein by reference as Exhibit 13).

38. SABEL OF HOUSTON, LTD. signed an agreement dated August 4, 2015 with PERDUE BRANDON to make the tax suit an "*in rem*" proceeding, thereby letting the taxing authorities take the property and sell it without giving any notice to the Plantiffs, equity owners of the property. By signing this agreement, SABEL OF HOUSTON, LTD., violated the fiduciary agreement between themselves and PLAINTIFFS.

39. In the research to draft this complaint, KELLI AUSTIN found that the "Instructions for the Constable" in the file she had to purchase from the Chambers County District Court of Cause Number CV25215, states as follows:

> COPIES OF NOTICES OF SALE SHOULD BE SENT TO THE FOLLOWING: MICHAEL O'CONNOR ATTORNEY FOR SABLE OF HOUSTON, LTD, 2500 TANGLEWILDE, SUITE 222, HOUSTON, TX 77063
>
> **KELLI AUSTIN, PO BOX 867, 3418 BRIDGETTE LANE, MONT BELVIEU TX 77523, MONT BELVIEU TX 77580.**
>
> (a copy of which has been attached hereto and incorporated herein by reference as Exhibit 14) (Emphasis added)

In the documents KELLI AUSTIN filed with the court she listed her address at 3418 Bridgette Lane, Mont Belvieu Texas 77523. The address, PO Box 867 Mont Belvieu, Texas 77580 is also a valid address for KELLI AUSTIN, which she has never provided to the Court. Unfortunately, the address as listed by HUMPHREY, is not a valid address. The address PO Box 867 comes first in the string of the address, so the first zip code is the one that would have been used by the constable, which is 77523. Any mail sent to the

11

address PO Box 867, Mont Belvieu, Texas 77523 would have gone to the Baytown Post Office and presumably either put in the PO Box 867 in Baytown or returned to sender, not in the address PO Box 867 in Mont Belvieu. The address 3418 Bridgette Lane is listed second. The second zip code is given as 77580. Mail addressed to 77580 is only for PO Boxes in Mont Belvieu, and is returned by the Mont Belvieu Post Office to sender, per KELLI AUSTIN's conversation with Sandy, a US Postal Employee at the Mont Belvieu Post Office on March 3, 2016 (see KELLI AUSTIN Affidavit, attached hereto and incorporated herein by reference as Exhibit 10). This is not the address given for KELLI AUSTIN and is not an address at all. It is a very confusing combination of portions of two different addresses.

40. The address PO Box 867, Mont Belvieu, Texas 77580 was the valid mailing address for Bobby Joe Austin and Billie S. Austin for over 40 years. Until October of 2015, no Austin had mail delivery at their street address in Mont Belvieu. On or about October 2015, KELLI AUSTIN installed a mailbox and informed the Baytown Post Office that services Mont Belvieu street delivery, that the mailbox was there and began receiving mail at the street address for the first time in forty years. The PO Box is still open and checked regularly. HUMPHREY claims she had no knowledge of the Austins or their ownership of the property, and in fact disavows said ownership. If that is accurate, how did she have the Elder Austins' mailing address, which is part of the misstated address as shown on the Constable's form?

41. Based on information and belief, the Taxing Authority sold the property on March 1, 2016 for Forty-Eight Thousand Dollars ($48,000.00). The taxing authority will receive $21,000 for the taxes and the remaining $27,000 ordinarily would have gone to SABEL OF HOUSTON, LLLP, who has disclaimed any interest in the property. Who exactly does PERDUE BRANDON et al and YOLANDA HUMPHREY believe these funds belong to, since SABEL is *in rem* only, DEFENDANTS are aware the property was owned by someone, namely the AUSTINS. KELLI AUSTIN received a document from the county clerk telling KELLI AUSTIN the funds were hers and she needed to file a claim for them. (a true and correct copy is attached hereto and incorporated herein by reference as Exhibit 15)

42. The law firm and the taxing authorities breached their duty of good faith and fair dealing when they failed to properly account for taxes owed concerning the Austin property and failed to notify all interested parties about the foreclosure of the Austin property to collect allegedly unpaid taxes. The duty of good faith and fair dealing arises in situations where "special relationships" exist. The relationship of tax collector and taxpayer certainly rises to a special relationship, the tax collector has a duty to accurately assess, collect and account for taxes from the proper parties and concerning the proper properties. Additionally, the tax collector has a duty to properly notify all parties in interest of delinquent taxes and efforts to foreclose on property to collect unpaid taxes.

The deeds of trust and releases of liens on file in the real property records of Chambers County clearly put the law firm and the taxing authorities on notice that KELLI AUSTIN has an interest in the property.

43. A special relationship existed between KELLI AUSTIN, Trustee and COMMERCE TITLE and its successor-in-interest PREMIER TITLE, *Vail v. Texas Farm Bureau Mut. Ins. Co.*, 754 SW 2d 129, 135 and as such Plaintiffs insurer that insured was seeking relief under Deceptive Trade Practices Act for conduct proscribed by Insurance Code.

44. After many failed attempts, KELLI AUSTIN was able to get the buyer portion of the closing documents from PREMIER LAND TITLE (a true and correct copy is attached hereto and incorporated herein by reference as Exhibit 16). These documents reflect many errors with the closing. KELLI AUSTIN TRUSTEE had to pay SABEL $45,000 earnest money March, 2006 (a true and correct copy is attached hereto and incorporated herein by reference as Exhibit 17). The standard TREC agreement in the file SABEL OF HOUSTON, LTD. states: "SELLER MUST NET $93,000 (INCLUDING THE $45,000 DEPOSIT AFTER PAYMENT OF ALL THE CLOSING COSTS AND PROPERTY TAXES. **ANY NET BALANCE OVER $93,000 RECEIVED BY SELLER WILL BE REFUNDED TO BUYER.**" [EMPHASIS ADDED].

This document is signed and initial by Michael O'Connor for SABEL OF HOUSTON and Robert J. Austin. It is not initialed or signed by Kelli D. Austin Trustee or Billie S. Austin. KELLI AUSTIN has NEVER seen this document until March 15, 2016. The closing statements reflect the CASH TO SELLER was $70,355.08. This means SABEL received $70,355.08 at the closing. SABEL previously received $45,000 and should have only received $48,000 net proceeds at the closing with the remaining $22,335.08 being refunded to Bobby Joe Austin and Billie S. Austin. Since KELLI AUSTIN had to personally pay $11,300 in additional funds at the closing to cover all of the fees, she knows this money was never refunded (See Kelli Austin affidavit, Exhibit 10), PREMIER TITLE refuses to give her a copy of the disbursement of the funds until it was demanded by Patrick Quigly at the Texas Department of Insurance.

45. Michael O'Connor gave PREMIER permission to give AUSTIN the seller portion of the documents on March 16, 2016. Although in her possession, Wiley of PREMIER did not turn over the files to AUSTIN until after the direct intervention of the Texas Department of Insurance, and not until the end of the day on Friday, March 18, 2016. These documents were incomplete as they did not show the instructions, the reason the property taxes went from being $8499.68 to being over $36,000 at the closing on March 3, 2006. When questioned about the lack of documents, Wiley did not reply. Subsequent conversations with Penny Jones, Legal Counsel for PREMIER did not give clarity to this matter. It was not until the Texas Department of Insurance intervened that AUSTIN could see where the money went and that SABEL OF HOUSTON requested the correct document be filed. These documents were not received from the Texas Department of Insurance until May 2, 2016, despite requesting them from PREMIER on March 11, 2016. Until the intervention of the TDI, PREMIER selectively gave copies that did not

include the references to the Special Warranty Deed, which they failed to file.

46. SABEL OF HOUSTON, LTD breached the contract that was entered into with Kelli D Austin, Trustee on May 26, 1993 and Bobby Joe and Billie S. Austin and evidenced by the deed of trust in Volume 208, Page 582 of the real property records in Chambers County, Texas by not returning the $22,335.08 excess from the closing.
    a) Plaintiffs performed under the terms of the contract, paying the debt in full, shown by the release filed May 10, 2006, Instrument number 14586 OR Volume 683 page 163-165. (a true and correct copy is attached hereto and incorporated herein by reference as Exhibit 17)
    b) By failing to transfer the property back to the Austin Family, Defendants breached the terms of the contract. Defendants have been aware, at least since the lawsuit was filed in November 2009 and should have correctly transferred the Deed to the AUSTINS. In addition, by failing to return the $22,335.08 to the Austins after closing, SABEL further breached the contract from the closing.

47. Daniel Elkins, Attorney and COMMERCE TITLE are businesses and Plaintiffs are consumers as defined by the Texas DTPA. Attorney and COMMERCE TITLE breached the agreement with Plaintiffs by not recording the deeds as described in Paragraph 10 hereof. Attorney Elkins and COMMERCE TITLE have a stated obligation to perform as agreed. They have implied duty to perform the obligations in an acceptable manner to accomplished the desired closing. Attorney and COMMERCE TITLE have damaged Plaintiffs in an amount exceeding One Hundred Ninety-Four Thousand, Four Hundred Sixty-Three Dollars and Eight Cents ($194,463.08), plus interest and treble damages exceeding Three Hundred Thousand Dollars pursuant to the Texas Deceptive Trade Practices Act (DTPA).

48. Michael O'Connor prepared and Lewis Ress signed a complete release of the entire note and a Special Warranty Deed, as shown by the documents provided to KELLI AUSTIN by the Texas Department of Insurance (See Exhibit 7), however, the release document is filed with a legal description with only 3402 Bridgett Lane as being released (attached hereto and incorporated herein by reference as Exhibit 17) and the Special Warranty Deed is never filed.

49. In documents received from PREMIER TITLE on March 18, 2016, the buyer of the property, Bobby Joe Austin, paid off SABEL in full. SABEL sent a complete release of the deed of Trust to COMMERCE TITLE by fax on April 21, 2006. This document released the entire 3 parcels of property. Sometime between April 21, 2006, when the complete release was received and May 10, 2006 when the partial release was recorded, COMMERCE TITLE or its agents added a legal description of just 3402 Bridgett Lane to the recording. Exhibit 17 clearly shows the release signed by Ress is a one page document fully releasing the lien. This document was obtained from the legal department of PREMIER TITLE. Exhibit 17 clearly shows the release, as filed in the real property

records of Chambers County, has a legal description added to it that relates solely to 3402 Bridgett Lane. The document is stamped COMMERCE TITLE.

50. In addition, COMMERCE TITLE breached its ethical obligation to Bobby Joe Austin and Billie S. Austin and the Plaintiffs and to SABEL of Houston by altering a signed and notarized document releasing the Austin debt and filing it at the County. By adding the legal description of the one tract of land to a full release, COMMERCE TITLE and its successor in interest PREMIER TITLE have acted in bad faith. PREMIER TITLE has acknowledged the failure to file the correct deed in an email from Windy Wiley to KELLI AUSTIN, dated March 18, 2016 wherein Ms. Wiley states,

"That is a complete release it looks like the Exhibit "A" was attached to it before it went to recording. I'm not sure who did that or why? I do see that the DOT that it is releasing has a different legal description and it says it is a full release of that DOT. (We can only pull copies in Chambers County, we do not have title plant that can look and see how the County actually posted the document.)

I do see what you are saying."

(a true and correct copy of the email exchange is attached hereto and incorporated herein by reference as Exhibit 18)

51. COMMERCE TITLE had full control of the release after receiving it from Lewis Ress on April 21, 2006 until it was filed May 10, 2006. The document has COMMERCE TITLE's name written on it. COMMERCE provided a copy of the receipt wherein it paid the filing fees for the documents to be filed at the County. COMMERCE also had full control of the SPECIAL WARRANTY DEED, prepared by O'Connor, signed by Ress, that would have given full rights and title back to Bobby Joe and Billie S. Austin.

52. Windy Wiley at PREMIER also stated to KELLI AUSTIN that Windy could see where the AUSTINS were due the $22,335.08 at closing and that all of those funds were sent to SABEL. It was COMMERCE'S duty and responsibility to correctly distribute the funds at the time of the closing, and the fact that they preyed on an elderly and infirm couple, depriving them of their property and funds, is in violation of the Texas Deceptive Trade Practices Act.

**B. Declaratory Judgment**
53. Plaintiffs incorporate Paragraphs 1-52 as if fully set forth herein.

54. Pleading further and/or in the alternative, Plaintiffs ask the Court, pursuant to Chapter 37 of the Texas Civil Practice & Remedies Code, to declare that title to the Property is

15

vested in the Austin Family, not subject to any lien.

55. Any taxes that might be owed, are the direct and proximate result of COMMERCE'S failure to properly perform and should be paid by them.

   **C. Wrongful Foreclosure**
56. Plaintiffs incorporate Paragraphs 1-55 as if fully set forth herein.

57. Pleading further and/or in the alternative, Plaintiffs would assert the foreclosure of the tax lien was defective in that a tax lien cannot be foreclosed without proper judicial proceedings. Moreover, the defect led to a grossly inadequate sale price, inasmuch as the Property, which has a value of over $100,000, was sold for the sum of $48,000.00. The sale further damaged Plaintiffs by causing the apparent extinguishment of their interest in the Property.

58. HUMPHREY and PERDUE BRANDON, as the attorney for the taxing authority are their agent, and agents are exempt from the actions on behalf of principal of so long as said actions are authorized by the principal. AUSTINS believe HUMPHREY and PERDUE BRANDON knowingly went forward with the foreclosure without notice to the owner of the property, acted on their own accord, without authorization from the Taxing Authority Defendants and is therefore personally liable for all damages exceeding One Hundred Thousand Dollars ($100,000).

## VI. REQUEST FOR INJUNCTIVE RELIEF

59. Plaintiffs incorporate Paragraphs 1-58 as if fully set forth herein.

60. Plaintiffs seek a temporary restraining order and temporary injunction maintaining the status quo prior to the sale, barring the sale, conveyance or transfer of the Property while this action remains pending, without further order of this Court. Plaintiffs further seek a temporary restraining order and preliminary injunction barring the leasing or encumbrance of the Property while this action remains pending, without further order of this Court. Defendant Lanae Thompson has filed an Eviction Proceeding (a true and correct copy is attached hereto and incorporated herein by reference as Exhibit ~~24~~) in the Justice of the Peace Court for West Chambers County, to be heard May 12, 2016. The Plaintiffs are entitled to injunctive relief under the Texas Civil Practices and Remedies Code, Title 3, Extraordinary Remedies, Chapter 65, Subsection B, because as it:

   (a) Restrains the Defendant Lanae Thompson from the act of eviction which is prejudicial to the Plaintiffs;
   (b) Defendants are performing or allowing to be performed an act relating to this pending litigation, in violation of the Plaintiffs' 14th Amendment Rights.
   (c) Plaintiffs are entitled to a writ of injunction under the principles of equity and the statutes of this state relating to injunctions.

  (d) Irreparable injury to real or personal property is threatened, irrespective of any remedy of law.

Plaintiffs are in imminent danger of harm, as the failure to award such temporary relief would permit the further transfer of the Property, or an interest therein, to parties that might seek to claim as bona fide purchasers, leaving Plaintiffs without an adequate remedy at law. As of March 22, 2016, landscaping of the yard has begun in violation of the *Lis Pendens*. Plaintiff has no other remedy at law or in equity. The home has been in the Austin Family for 120 years, is unique and cannot be replaced. In *Security State Bank & Trust v. Bexar County*, Court of Appeals of Texas, San Antonio, December 21, 2012, 397 SW3d 715, the Court held that because the parties were due notice of the tax sale, they could collaterally attack the judgment and seek to vacate the tax sale of property without having to comply with sections of tax doe requiring a deposit be paid since the Plaintiff's due process rights were violated by the taxing authorities' failure to provide notice or join it as a party to the underlying action. U.S.C.A. Const.Amend. 14; V.T.C.A., Tax Code §§ 33.54, 34.08.

## CONDITIONS PRECEDENT

61. All conditions precedent upon its claim for relief have been performed or have occurred.

## DAMAGES

62. The Plaintiffs have been damaged by being deprived of their real property without the due process of law and in violation of, including but not limited to, 14th Amendment to the US Constitution and 42 USC § 1893 in an amount exceeding Two Million Dollars ($2,000,000.00).

63. The Plaintiffs have been damaged in an amount exceeding One Hundred Ninety-Four Thousand, Four Hundred Sixty-Three Dollars and Eight Cents ($194,463.08) for the loss of their real property without due process.

64. The Plaintiffs have been damaged by the intentional and wrongful foreclosure of their real property in an amount exceeding One Hundred Thousand Dollars ($100,000.00)

## PRAYER

65. For the reasons stated above, plaintiff asks that each Defendant be cited to appear and answer, and that upon trial, the Court enter the following judgment:

a)  The tax sale of the subject Cause No. 25215 in the 344th District Court of Chambers County, Texas is *void ab initio* and that any claim of ownership by LANAE THOMPSON under said tax sale and deed, and as a result of said judgment, did not divest ROBERT J. AUSTIN, JR., MICHAEL AUSTIN and KELLI AUSTIN of their prior ownership of said property and now title to the property.

b)  That ROBERT J. AUSTIN, JR., MICHAEL AUSTIN and KELLI AUSTIN are the legal owners and holder of the title to the property subject to the sale.

c)  That the Court enter a judgment declaring the said deed to LANAE THOMPSON declaring the deed invalid and unenforceable, and order it removed from the title to the property made the subject of this litigation, quieting title in ROBERT J. AUSTIN, JR., MICHAEL AUSTIN and KELLI AUSTIN.

d)  Award Treble Damages against Defendants BARBERS HILL INDEPENDENT SCHOOL DISTRICT, ISD, CHAMBERS COUNTY, PERDUE BRANDON FIELDER COLLINS & MOTT, LLP AND YOLANDA HUMPHREY, INDIVIDUALLY, COMMERCE TITLE and PREMIER LAND TITLE as successor-in-interest for violation of the Texas Deceptive Trade Practices Act.

e)  Award actual damages against COMMERCE TITLE and its successor-in-interest PREMIER LAND TITLE for the $22,335.08 withheld from the AUSTINS at the closing, $60,000 for the redemption of the property and $100,000 for the lost loan due to the failure to correctly record the deeds and for fraudulently attaching a legal description to a document, changing its intent and for failing to file the Special Warranty Deed, as requested by the seller.

f)  Award the $22,335.08 from SABEL to the AUSTINS for failure to return the amounts received in excess of $93,000.00, as per the terms of the Contract entered into in April 2006.

g)  Awarded punitive damages of Two Million Dollars Five Hundred Thousand Dollars ($2,500,000) against Defendants BARBERS HILLS ISD, CHAMBERS COUNTY, CITY OF MONT BELVIEU, PERDUE BRANDON FIELDER COLLINS AND MOTT, LLP, YOLANDA HUMPHREY and PREMIER LAND TITLE as Successor-in-Interest to COMMERCE TITLE for their actions against

Plaintiffs legally owned property.

DATED: MAY 11, 2016.

FLANAGAN, LTD.

Sean P. Flanagan, Esq. (Licensed only in Nevada)
Nevada Bar No. 5304
10223 Rarity Avenue
Las Vegas, Nevada 89135

(702)528-1234
(800)510-5810 fax

Attorney for Plaintiff